**THILL CANDY COMPANY, Inc., a New York corporation, Plaintiff,**

v.

**FARM BUREAU MUTUAL AUTOMOBILE INSURANCE COMPANY, an Ohio corporation, Defendant.**

**Civ. A. No. 21068.**

United States District Court
E. D. Pennsylvania.
Feb. 27, 1959.

---

238

Harrison G. Kildare (of Rawle & Henderson), Philadelphia, Pa., for plaintiff.

Joseph D. Shein, Max E. Cohen, Philadelphia, Pa., for defendant.

STEEL, District Judge.

The questions for decision are whether the "indemnification" and "defense" clauses of the "Standard Workmen's Compensation and Employers' Liability Policy", which defendant issued to plaintiff, obligated defendant (1) to indemnify plaintiff against a judgment suffered in an action brought against plaintiff by one of plaintiff's employees, and (2) to defend the employee's action on plaintiff's behalf. Plaintiff seeks a declaratory judgment under 28 U.S.C. § 2201 to resolve an actual controversy between the parties concerning the responsibilities of defendant to plaintiff under the "indemnification" and "defense" clauses.

Plaintiff is a New York corporation; defendant is an Ohio corporation; and the amount in controversy, exclusive of interest and costs, exceeds $3,000. Jurisdiction exists under 28 U.S.C. § 1332(a)(1).

The following facts which gave rise to the litigation are not in dispute:

On September 1, 1952 defendant executed and delivered its policy to plaintiff. in Pennsylvania. While the insurance was in effect, Truman Morton, an employee of plaintiff, was injured when riding toward his home at the end of his work day, as an occupant of a box-body truck which another of plaintiff's employees was returning to a rental agency from which plaintiff had leased it. The injury occurred in Philadelphia when the top of the truck struck an overhanging tree limb. Morton was a regular employee of the plaintiff whose hours were from 9:00 a. m. to 4:30 p. m. Prior to the accident Morton's duties for the day had terminated. Plaintiff had no agreement with Morton to provide him with transportation to and from work. When Morton was injured he was not using the truck in the course of his employment by plaintiff but for his own personal convenience as an invitee of plaintiff. The truck driver was operating the truck in the course of his employment by plaintiff and was doing the business of the plaintiff.

Although Morton and plaintiff were subject to the Workmen's Compensation Act of Pennsylvania, 77 P.S. § 1 et seq., Morton made no claim under it.[1] Instead, Morton filed an action against plaintiff in the United States District Court for the Eastern District of Pennsylvania alleging that while he was a "passenger" in the truck being operated by plaintiff upon its exclusive purpose and business he was injured as a result of the negligent operation of the truck by plaintiff. The complaint made no reference to the fact that Morton was employed by plaintiff. Plaintiff filed an

---

1. Both parties have requested the Court to make this finding (Pltff.'s Request, Par. 10; Dft.'s Request, Par. 8) notwithstanding that plaintiff refused to so stipulate during the trial (Trial Record, pp. 35–36).

answer which alleged, among other things, that (a) Morton was an employee of plaintiff and, hence, his sole remedy was under the Workmen's Compensation Act of Pennsylvania, and (b) Morton was not acting within the scope of his employment, but was a trespasser on the truck, and accordingly plaintiff owed Morton no duty except to refrain from acts of gross and willful negligence. The action resulted in a verdict and judgment in favor of Morton against plaintiff in the sum of $3,000. Plaintiff paid the judgment, together with costs of Morton in the sum of $129, its own costs of $250, and its own counsel fees in the amount of $600. These items, totalling $3,979, were paid by plaintiff on or before July 19, 1957.

Immediately after the accident, plaintiff reported the accident to defendant, and thereafter kept defendant's representative fully and promptly informed of. all developments in connection with the claim. Although plaintiff requested defendant to defend the action, defendant refused to do it. Plaintiff then engaged counsel at its own expense in order to investigate the claim and to defend the action.

The instant action was begun on July 20, 1956 prior to the trial of the Morton action which took place on June 4 and 5, 1957.

### Obligation to Indemnify

The indemnification problem arises because the injury for which Morton recovered his judgment did not occur in the course of his employment by plaintiff.

Paragraph 1.(a) of the policy relates to the obligation of the defendant to pay workmen's compensation claims. Thereby the defendant agreed "as respects personal injuries sustained by employees \* \* \*":

"1.(a) To pay promptly to any person entitled thereto, under the

Workmen's Compensation Law \* \* \* the entire amount of any sum due \* \* \*

"(1) to such person because of the obligation for compensation for any such injury imposed upon or accepted by this Employer under such of certain statutes, \* \* \*"2

Paragraph 1.(b), as amended by an endorsement captioned "Employers' Liability for Damages by Action at Law" attached to the policy before issuance, relates to the obligation of the defendant to indemnify the plaintiff against liability imposed by law on account of injuries to employees. Thereby the defendant agreed "as respects personal injuries sustained by employees \* \* \*":

. "1. To indemnify this Employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries sustained by employees within the territorial limits of the United States of America or the Dominion of Canada \* \* \*"3

■ When an injury is compensable under the Workmen's Compensation Act, the employee's remedy under the Act is exclusive and recovery under the common law is barred. 77 P.S. § 481; Hyzy v. Pittsburgh Coal Co., 1956, 384 Pa. 316, 121 A.2d 85; McIntyre v. Strausser, 1950, 365 Pa. 507, 76 A.2d 220. In those circumstances Paragraph 1.(a) of the policy comes into play. The indemnification provided in Paragraph 1.(b)1 of the policy must, therefore, relate solely to injuries to employees which are not compensable under the Workmen's Compensation Act. See Zeitz v. Zurich General Accident & Liability Ins. Co., 1949, 165 Pa.Super. 295, 67 A.2d 742, 745; Edward Stern & Co. v. Liberty Mut. Ins. Co., 1921, 269 Pa. 559, 112 A. 865. Morton's injury was not covered by the Workmen's Compensation Act because the injury did not arise in the course of Morton's

---

2. An endorsement on the policy discloses that the Workmen's Compensation Act of Pennsylvania is the Compensation Law referred to.

3. This clause will be referred to as "Paragraph 1.(b)1", and the other numbered paragraphs of the endorsement amending Paragraph 1.(b) will be referred to as "Paragraph 1.(b)2", etc.

employment. 77 P.S. § 431; Ginther v. J. P. Graham Transfer Co., 1943, 348 Pa. 60, 33 A.2d 923, 148 A.L.R. 704.

The question thus reduces itself to this: what type of non-compensable injury does Paragraph 1.(b)1 cover?

■ Essentially, the problem is one of interpretation of the policy. Since the policy was executed in Pennsylvania, Morton's injury occurred in Pennsylvania, and Morton's judgment was obtained in Pennsylvania, the policy must be interpreted in accordance with Pennsylvania law. Unfortunately, the law of Pennsylvania affords little help in ascertaining the indemnification coverage which was intended.

The defendant contends that its obligation is limited to injuries occurring in the course of employment, and hence the policy does not require defendant to indemnify plaintiff against Morton's injury which occurred after his work duties had been completed. On the other hand, the plaintiff argues that the policy contains no words of limitation which would restrict the indemnification to injuries arising in the course of employment and that the argument of the defendant that the policy is so restricted reads limitations into the policy which are unwarranted by the generality of the language used. Plaintiff, therefore, concludes that it is covered by the comprehensive language of indemnification since Morton was employed by plaintiff when the accident occurred, even though Morton was not then acting within the scope of his duties.

■ The argument of defendant that its obligation to indemnify is limited to injuries occurring in the course of employment appears, at first blush, to make Paragraph 1.(b) meaningless. Workmen's Compensation applies to injuries arising in the course of employment and

a general indemnification like Paragraph 1.(b)1 has been held to apply only to injuries which are not covered by Workmen's Compensation. Zeitz v. Zurich General Accident & Liability Ins. Co., supra; Edward Stern & Co. v. Liberty Mut. Ins. Co., supra. So it would seem that under defendant's interpretation no field exists in which Paragraph 1.(b)1 can operate. There is one class of injuries in the course of employment, however, which Workmen's Compensation does not cover; viz., injuries which occur, under certain circumstances, outside of Pennsylvania. 77 P.S. § 1. But Paragraph 1.(b)1 includes indemnification of injuries anywhere in the United States or Canada. So, defendant's interpretation of Paragraph 1.(b)1 would not make it completely meaningless, for under certain circumstances it would apply to injuries in the course of employment outside of Pennsylvania. Still, as far as Pennsylvania injuries are concerned—and Paragraph 1.(b)1 purports to apply to these injuries—the indemnification under defendant's theory is illusory, unless injuries in Pennsylvania sustained in the course of employment are, under some unidentified circumstances (defendant has suggested none), outside of the coverage of Workmen's Compensation Act.

The policy itself contains language pointing to an intention not to limit indemnification to injuries arising in the course of employment. Paragraph 1.(b)4 states that the words " 'liability imposed upon him by law for damages on account of such injuries' " contained in Paragraph 1.(b)1, include the liability of an employer to a person from whom an "employee" has received damages "for injuries sustained by such employee *arising out of and in the course of his employment*." [4]

4. Paragraph 4 provides:

"4. The words 'liability imposed upon him by law for damages on account of such injuries' in Paragraph One (b) of the policy are inclusive of the liability imposed upon this Employer by reason of a suit or claim brought against him by another to recover the amount of damages obtained from such other by an employee of this Employer for injuries sustained by such employee arising out of and in the course of his employment."

The italicizing of the words in the text has been supplied by the Court; it does not appear in the policy.

The policy requirement that an injury to an employee must be one "arising out of and in the course of his employment" in order to qualify for indemnification is limited to the special situation to which Paragraph 1.(b)4 is directed. This limitation finds no counterpart in the basic indemnification of Paragraph 1.(b)1 against liability for "injuries sustained by employees", or indeed, in any other part of the policy.

It is reasonable to conclude that when it was intended to limit indemnification to injuries sustained by an employee "arising out of and in the course of his employment", the policy said so; and when the liability undertaken was of a broader kind, the limiting words were omitted. It is not to be supposed that the words "injuries sustained by employees" in Paragraph 1.(b)1 were intended to mean precisely the same thing as "injuries sustained by such employee arising out of and in the course of his employment" in Paragraph 1.(b)4. Yet, the acceptance of the defendant's construction of the policy would require the Court to attribute an identical meaning to these radically different expressions, both of which are contained in the same endorsement.

Furthermore, Paragraph 6 of the policy (not the amendatory endorsement) defines injuries which are subject to indemnification as those

"* * * sustained by reason of the business operations described in said declarations which, for the purpose of this insurance, shall include all operations necessary, incident or appurtenant thereto, or connected therewith, whether such operations are conducted at the work places defined and described in said declarations or elsewhere in connection with, or in relation to, such work places." [5]

Here, in effect, is a statement that an injury, to be indemnifiable, must occur in the course of the business *of the employer*. Had defendant intended to limit indemnifiable injuries to those sustained by an employee in the course of *his* employment, Paragraph 6 would have been an appropriate place to have said so. Its failure to do so argues strongly against the interpretation of the policy which defendant urges.

The construction thus placed upon Paragraph 6 of the policy is at odds with the decision in Boyle-Farrell Land Co. v. Standard Acc. Ins. Co., 8 Cir, 1928, 24 F.2d 55, where a similar provision was construed to require an insurer to indemnify an employer against liability only if the injury occurred to the employee while engaged in his employment. With due deference to the distinguished Court which rendered the decision, it is difficult to perceive how the language of the policy will support the construction which the Court placed upon it.

Authorities dealing with problems comparable to that under examination are assembled and discussed in Pacific Employers Insurance Company v. Gilt Edge Dairy, 10 Cir., 1955, 218 F.2d 724, 725. There the question was whether a "standard workmen's compensation and employers' liability policy" provided the employer with indemnification against liability for personal injuries sustained by an employee while buying ice cream for her personal use at the employer's plant. The record did not show whether the employee had ceased her day's work or had simply temporarily departed from her duties to attend to personal affairs. The policy in question provided that the insurance company should indemnify the employer

"* * * 'against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed * * *'".

The Court said that the purpose of this clause was to afford coverage when an injury to an employee did not occur in the

---

5. The business operation described in the declaration is the manufacture of candy.

course of his employment, and hence would not be compensable under the Workmen's Compensation Act and the first insuring clause of the policy. In defining the type of injury insured against, the Court said (at page 727):

"It is sufficient, we think, if it can be said that the injury resulted from a hazard reasonably incident to or in some way casually connected with her employment. * * *"

In holding that the injury was one which was subject to the policy coverage, the Court said of the employee (at page 727):

"* * * it is decisively clear that she had not departed from the premises where she was employed and that the hazard to which she was subjected and which brought about her injury was incident to and reasonably associated with her status as one 'legally employed'."

Paragraph 6 of the policy in the Gilt Edge Dairy case, as appears from the record on appeal, was identical with Paragraph 6 of the policy now in litigation, although Paragraph 6 was not mentioned in the opinion. The Court considered Boyle-Farrell Land Co. v. Standard Acc. Ins. Co., supra, but stated that it was distinguishable upon its facts (218 F.2d at page 727).

Basically, the Gilt Edge Dairy decision turned upon the Court's view that the injured person was encompassed within the policy phrase "such employees as are legally employed". While Paragraph 1. (b) of the policy in suit, prior to its amendment, was identical with the comparable clause before the Court in the Gilt Edge Dairy case, the words "as are legally employed" were dropped out of Paragraph 1.(b) when the amendatory endorsement was added to the policy. For present purposes, however, the change is inconsequential. If at the time of the accident in the Gilt Edge Dairy case the injured employee was "legally employed" within the meaning of that policy, as the Court held that she was, then at the time when Morton was injured he was an "employee" within the meaning of the policy in suit.

Furthermore, it is reasonable to conclude that had the employer-employee relationship not existed between plaintiff and Morton, the latter would not have been an "invitee" riding upon plaintiff's truck and the injury would not have occurred. In this sense, Morton's injury, in the language of the Gilt Edge Dairy opinion, resulted "from a hazard reasonably incident to * * * (his) employment" (218 F.2d at page 727).

█ Finally, were the question more doubtful than it appears to be, an interpretation of the policy in favor of the indemnification sought by plaintiff would be justified under the principle that when the language of a policy is doubtful or obscure, it will be construed against the insurer. Frick v. United Firemen's Ins. Co., 1907, 218 Pa. 409, 67 A. 743, 746; Rathblott v. Royal Indemnity Co., 1933, 310 Pa. 37, 164 A. 718, 719; Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Ins. Co., 1956, 385 Pa. 394, 123 A.2d 413, 59 A.L.R.2d 546.

### Obligation to Defend

Morton's complaint made no reference to his status as an employee. So far as his complaint disclosed he was simply a member of the public who was riding in the plaintiff's truck. However, the answer filed by plaintiff alleged that when Morton was injured, he was employed by plaintiff. And the defendant in the instant action admits that plaintiff kept defendant's representatives fully and promptly informed of all developments in connection with Morton's claim. So that there can be no doubt that the defendant knew that Morton's suit against plaintiff was, at least according to plaintiff's version, "on account of" an injury to an employee. Moreover, in the instant action defendant has conceded that Morton was in plaintiff's employ on the date of the injury, and has requested that this be found as a fact.

Under the policy in suit the defendant agrees "as respects personal injuries sustained by employees":

"3. To defend, in the name and on behalf of this Employer, any suits or other proceedings which may at any time be instituted against him on account of such injuries, including suits or other proceedings alleging such injuries and demanding damages or compensation therefor, although such suits, other proceedings, allegations or demands are wholly groundless, false or fraudulent.

"4. To pay all costs taxed against this Employer in any legal proceeding defended by the Company, all interest accruing after entry of judgment and all expenses incurred by the Company for investigation, negotiation or defense."

By Paragraph 3 defendant has thus undertaken to defend on plaintiff's behalf "any suits * * * instituted against (it) on account" of personal injuries sustained by "employees". Although the policy states that this obligation *includes* the defense of suits "alleging" injuries to employees, the duty to defend is not limited to instances where the employment relationship is *alleged*. It comprehends the defense of any suit instituted *"on account of"* an employee's injury regardless of whether the employment relationship is alleged. The Morton suit was within this category.

It is clear, therefore, that the defendant was obligated to defend the Morton action.

Wilson v. Maryland Cas. Co., 1954, 377 Pa. 588, 105 A.2d 304, 50 A.L.R.2d 449, does not require a different conclusion. There the Court held that a "defense" clause which required the insurance company only to defend suits *"alleging"* injuries insured against created no duty to defend when the complaint affirmatively *alleged* an injury which was *not* insured against.[6] The policy terms are unlike those here under consideration. The decision is therefore inapposite.

For the foregoing reasons plaintiff is entitled to a judgment against defendant in the amount of $3,979 with interest thereon from July 19, 1957 to the date when the judgment is entered.

The findings of fact and conclusions of law required by Rule 52(a), 28 U.S.C., are stated in this opinion.

Counsel for plaintiff is requested to submit a judgment in accordance with this opinion.

---

6. The Court described the defense clause, with the italics indicated, as follows (105 A.2d at page 305):

"The policy further provided that '*As respects such insurance as is afforded by the other terms of this policy* the Company shall (a) defend in his name and behalf any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; * * * *' ".

The Wilson decision is subject to a long annotation in 50 A.L.R.2d 458–512: "Allegations in third person's action against insured as determining liability insurer's duty to defend".