Ruby BAYLESS, Petitioner,

v.

SPARKMAN LIVESTOCK SALES, United States Fidelity and Guaranty Company, a corporation, and the State Industrial Commission, Respondents.

No. 38277.

Supreme Court of Oklahoma.

March 10, 1959.

Rehearing Denied June 16, 1959.

Application for Leave to File Second Petition for Rehearing Denied
March 15, 1960.

James Z. Barker, Clinton, for petitioner.

Fenton & Fenton, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.

BLACKBIRD, Justice.

Ruby Bayless, hereinafter called claimant, filed her first notice of injury and claim for compensation under the Death Benefit Provisions of the Workmen's Compensation Law, 85 O.S.1951 § 1 et seq., stating that she is the widow of Thomas Nathaniel Bayless, hereinafter called em-

ployee, who was killed November 10, 1957, while in the employ of Sparkman Livestock Sales. The State Industrial Commission denied an award, and this proceeding is brought by claimant against Sparkman Livestock Sales, employer, and its insurance carrier, United States Fidelity and Guaranty Company, a corporation to review the order denying the award.

The record discloses that the employee was on his way from Elk City, Oklahoma, to Tupelo, Mississippi, when he died as the result of asphyxiation in a tourist court in Sherman, Texas. He left Elk City on November 9, 1957, and drove the employer's truck loaded with hogs and cattle to Fort Worth, Texas, unloaded the livestock and went to Sherman, Texas, where his death occurred. The owner of the tourist court testified that employee retired about 8:00 p. m. and was dead the next morning. The owner of the court found a gas stove burning in the room occupied by employee.

Colonel Sparkman, manager and member of the employer, testified that he directed employee to unload the livestock at Fort Worth and drive to Jackson, Mississippi, with the employer's truck and contact L. R. Webb, owner of a tourist court in Jackson, for the purpose of making arrangements for the return of the loaded truck from Tupelo. L. R. Webb was an associate of Sparkman. The testimony discloses that if it was the intention of employee to follow the directions as above described and go from Fort Worth to Jackson before going to Tupelo, the trip from Fort Worth to Sherman would be approximately 150 miles out of the way. Sparkman further testified that the employee paid for his own meals and lodging out of a commission earned by agreement between the employer and the employee.

Claimant offered the testimony of several witnesses, including a personal friend of the family, a son-in-law and children of claimant and employee, to the effect that Sparkman admitted to them that he told employee there were two routes to Tupelo and that the employee could take either

route. It is disclosed by the testimony that Sherman would be on one of these routes.

The State Industrial Commission found, in part, as follows:

"T. N. Bayless, deceased, was employed by respondent on November 9, 1957, to drive a truck load of livestock from Elk City, Oklahoma to Ft. Worth, Texas, for delivery and thence to Tupelo, Mississippi via Jackson, Mississippi, to pick up another load of livestock for return delivery to Elk City, Oklahoma, for which he was to be paid a commission based on gross income from operation of the truck, and was to pay his own personal expenses for meals and lodging.

"That decedent delivered that load of livestock to Ft. Worth, Texas, on November 10, 1957, and thereafter deviated from his route to Jackson, Mississippi, by changing to a different and longer route to Sherman, Texas where he rented a room in a motel the evening of said November 10, 1957 and died therein some time during said night from asphyxiation and by reason of which facts the death of said T. N. Bayless did not arise out of and in the due course of his employment with respondent."

Claimant presents the single issue that the State Industrial Commission erred in finding that the accidental injury resulting in death did not arise out of and in the course of the employment.

Our Court has considered cases wherein awards were made for accidental injury occurring while the employee was traveling for the employer. Trans-Tex Drilling Co. v. Pittser, Okl., 298 P.2d 446; Baash-Ross Tool Co. v. State Industrial Commission, Okl., 289 P.2d 659; Oklahoma State Highway Department v. Moyer, Okl., 302 P.2d 153; International Harvester Co. v. Harris, Okl., 272 P.2d 1046.

Although the above cases do not include one in which an accidental injury resulted while the employee was in a lodging, one case involves a highway accident on the

way to a cafe for meals and an intent thereafter to stay in a lodging. Baash-Ross Tool Co. v. State Industrial Commission, supra.

Other courts have passed directly on the question. Dalgleish v. Holt, 108 Cal.App. 2d 561, 237 P.2d 553; California Casualty Indemnity Exchange v. Industrial Accident Commission of California, 5 Cal.2d 185, 53 P.2d 758; Stansberry v. Monitor Stove Co., 150 Minn. 1, 183 N.W. 977, 20 A.L.R. 316; Lasear Inc. v. Anderson, 99 Ind.App. 428, 192 N.E. 762; and Texas Employers' Insurance Association v. Harbuck, Tex.Civ. App., 73 S.W.2d 113. In Dalgleish v. Holt, supra [108 Cal.App.2d 561, 237 P.2d 556], it is stated:

"As a general rule a commercial traveler is regarded as acting within the course of the employment during the entire period of his travel upon his employer's business. His acts in traveling, procuring food and shelter are all incidents of the employment, and where injuries are sustained during the course of such activities, the Workmen's Compensation Act applies. * * *"

■ We think the above cases support the rule that if the employee was on his way at the direction of the employer and was lodging at a place on that route, the fact that he was paying for his own lodging is without legal significance. The question presented therefore is whether there is any competent evidence reasonably tending to support the finding of the State Industrial Commission that the injury did not arise out of and in the course of the employment because the employee deviated from the route directed by his employer. We think there is.

■ It is the general rule that where an employee deviates from the route prescribed by the specific directions of the employer an accidental injury sustained during this period of deviation does not arise out of and in the course of the employment. Cochran v. Maassen Tool & Supply Co., 204 Okl. 60, 226 P.2d 953;

Harris v. Industrial Commission, 72 Ariz. 197, 232 P.2d 846; Annotations, and cases following, 100 A.L.R. 1053.

■ Claimant argues that the testimony of witnesses that Sparkman told them he had told employee there were two ways to Tupelo, Mississippi, and that the employee could take either way is not disputed. This is true. Although the record shows the case was continued for the taking of depositions, no depositions were taken and Sparkman was not recalled to testify after the testimony of these witnesses. But this does not obliterate or render valueless the testimony of Sparkman that he directed the employee to go to Jackson. Claimant does not argue that if the employee were directed to go to Jackson the trip to Sherman did not constitute a material deviation. Claimant rather argues the evidence is overwhelming there was no such direction. This was a question of fact to be determined by the State Industrial Commission. In Standish Pipe Line Co. v. Johnson, 197 Okl. 238, 169 P.2d 1018, it is stated:

"The question of whether an injury arose out of and in the course of employment is one of fact to be determined by the Industrial Commission under the circumstances of each particular case, and, where there is any testimony reasonably tending to support its finding, it will not be disturbed on an application to vacate the award."

There is competent evidence reasonably tending to support the order denying the award.

Order sustained.

DAVISON, C. J., and WELCH, HALLEY, and JACKSON, JJ., concur.

WILLIAMS, V. C. J., and JOHNSON, IRWIN, and BERRY, JJ., dissent.

JOHNSON, Justice (dissenting).

Ruby Bayless, claimant, filed her first notice of injury and claim for compensation under the Death Benefit Provisions of

the Workmen's Compensation Law, 85 O.S. 1951 § 1 et seq., stating that she was the widow of Thomas Nathaniel Bayless, an employee of the Sparkman Livestock Sales, who was killed November 10, 1957, while on his way from Elk City, Oklahoma, to Tupelo, Mississippi, as the result of asphyxiation in a tourist court in Sherman, Texas.

The State Industrial Commission found that the employee's death did not arise out of and in the course of the employment because the employee deviated from the route directed by his employer, and denied the claim for an award. This proceeding is brought by the claimant against Sparkman Livestock Sales, employer, and its insurance carrier, United States Fidelity and Guaranty Company, a corporation, to review the order denying the award.

No question is raised as to the cause of the employee's death, and I may state that but for the deviation the employee's death would have concededly been in the course of his employment, and compensable.

While we have recognized the rule that injuries received by an employee while traveling for the employer are within the course of his employment, Trans-Tex Drilling Co. v. Pittser, Okl., 298 P.2d 446; Baash-Ross Tool Co. v. State Industrial Commission, Okl., 289 P.2d 659; Oklahoma State Highway Department v. Moyer, Okl., 302 P.2d 153; International Harvester Co. v. Harris, Okl., 272 P.2d 1046, we have not had occasion to consider a case where the injury resulted while the employee was in a lodging. We did hold the employer liable for accidental injuries arising out of a highway accident on the way to a cafe for meals with intent to return to and stay in a lodging. Baash-Ross Tool Co. v. State Industrial Commission, supra. In this connection see California Casualty Indemnity Exchange v. Industrial Accident Commission of California, 5 Cal. 2d 185, 53 P.2d 758, 759. Therein it was held that death by asphyxiation of a traveling salesman occurring while he was spending the night in an auto camp while returning from a sales trip, when he lighted a gas heater and closed windows and doors, was compensable as "arising out of and in the course of employment." In the body of the opinion it was said:

"There seems no reason for denial that the death of the employee occurred in the course of his employment. 'As a rule commercial travelers may be regarded as acting in the course of their employment so long as they are traveling in their employer's business, including the whole period of time between their starting from and returning to their place of business or home.' Bradbury on Workmen's Compensation, p. 105. Within this rule the traveler, when overtaken by night, may reasonably seek the protection of an inn and still be regarded as acting in the course of his employment."

The more recent case of Dalgleish v. Holt, 108 Cal.App.2d 561, 237 P.2d 553, 556, is to the same effect. Therein in stating the rule it was said:

"As a general rule a commercial traveler is regarded as acting within the course of the employment during the entire period of his travel upon his employer's business. His acts in traveling, procuring food and shelter are all incidents of the employment, and where injuries are sustained during the course of such activities, the Workmen's Compensation Act applies. * * *"

The undisputed facts are that the employee left Elk City, Oklahoma, on November 9, 1957, and drove his employer's truck loaded with hogs and cattle to Fort Worth, Texas, where he unloaded the livestock and proceeded on his way to Tupelo, Mississippi, via Sherman, Texas where on November 10, 1957, he rented a cabin and retired about 8:00 p. m. where his death occurred.

The employer's evidence that he directed the employee to unload the livestock at Fort Worth and proceed to Tupelo via Jackson, Mississippi, rather than through

Sherman, Texas, is in conflict with the evidence of claimant. Her evidence on this issue was to the effect that the employer admitted before her witnesses that he discussed both routes with the employee before he started on the trip and informed the employee that he could take either route. From this evidence the Commission found that the employee deviated from the route he was instructed to take and was therefore not in the course of his employment when his death occurred because he had deviated from the prescribed travel route. While our ultimate determination of this issue presents a question of law, yet, so far as the factual situation is concerned, this court is bound by the findings of the Commission if they are reasonably supported by the evidence.

There is evidence reasonably tending to support the Commission's finding that there was a deviation from the prescribed travel route. This being true, then there was a deviation. It is for this court to determine the legal effect of that deviation upon claimant's right to recover.

There is nothing in the record to indicate that deceased was on a mission of his own or that he was not traveling in his employer's business when he took the route via Sherman, Texas to Tupelo, Mississippi, where he was to procure another load of livestock for his employer and return to Elk City, Oklahoma.

The journey from Fort Worth to Tupelo admittedly could have been made over either the route taken by the deceased employee via Sherman, Texas or via Jackson, Mississippi. The routes were approximately the same distance; however, the route that the employee took was shown to be a "little shorter distance to Tupelo." The employer testified in substance that his reasons for directing the employee, or driver, to travel to Tupelo via Jackson, Mississippi, were that he had a business associate in Jackson, and another truck that hauls from Jackson to Elk City; that they keep a room there in a tourist court at Jackson; that they had certain

stations where they had arranged for credit for their drivers to buy butane and propane for fuel for the truck, and that they would not have difficulty with the length of their trucks on that route.

With reference to this difficulty over the length of the truck, the employer testified:

"By The Witness: Our trucks are overlength in the State of Mississippi.

"By The Court: Oh, I see; I know what you mean.

"A. (Continuing) Now, we buy cattle in Mississippi all the time and we give them a market when we transport the cattle out and they could arrest us and fine us every time they caught us in Mississippi with our trucks because it is longer than their state law permits, but Mr. Massey, operator of the Mississippi livestock sale at Jackson got a special agreement with the 'Powers,' in other words, to where they would not arrest us boys for being overlength."

The employer testified that the decedent was an employee of his; that he directed him to drive one of his trucks on this trip; that in making that trip he directed him (deceased) where to go and what to do; that on this particular trip the employee was to get one-fifth ($1/5$) or twenty percent of the "gross outcome on the freight." Employer furnished the employee cash with which he was to pay the expenses of the truck, and the employee was to pay for his meals and lodging, with privilege of "choosing wherever he wanted to stay."

The employer further testified that when their men were on the road and stopped for the night in a tourist court or hotel or lodging, that during such time as they were in such lodging they were not considered (by the firm) as employees; that the only time they were considered as employees was when they were driving, loading, or unloading the truck, or cleaning out or repairing the truck.

In my opinion, based upon the authorities hereinbefore cited, it is immaterial what

the employer considers the legal status of its truck drivers to be when on a trip such as in the instant case. The employee's acts in "traveling, procuring food and shelter are all incidents of the employment," and when death, or injury, occurred during a period of shelter or lodging as it did herein, such employee must still be regarded as acting in the course of his employment, unless it can be said that by reason of the act of deviation the employee was not traveling in his employer's business.

Again we are without Oklahoma precedent directly in point. However, in Cochran v. Maassen Tool & Supply Co., 204 Okl. 60, 226 P.2d 953, we said that *where an employee has pursued a private purpose* (which is not shown to be the case here) and also attended a business errand of his employer in the course of a journey, test as to whether trip by the employee was his employer's trip, so that workmen's compensation is payable for injuries received during journey, is that if work of the employee created a necessity for travel or was a concurrent cause of the journey, he was in the course of his employment, though he is serving at the same time some purpose of his own, but if the work had no part in creating the necessity for travel, if the journey would have gone forward though business errand had been dropped, and would have been cancelled upon failure of the private purpose, though business was undone, travel is then personal, and personal is the risk.

The general rule is stated in 99 C.J.S. Workmen's Compensation § 221, p. 732, et seq., as follows:

"In determining the question of the employer's liability for an injury resulting on a trip undertaken for personal as well as business reasons, it is essential to determine whether, at the outset, the trip in question was that of the employer, or that of the employee. If it is the employer's trip, the employee is engaged in his employer's business and acting within the scope of his employment while going to, and re-turning from, the terminus of the trip. If it is the employee's trip, he is not within the scope of his employment while en route to, or returning from, the terminus of his trip. Detours and deviations are to be considered separately; thus, if it is the employee's trip, detours and deviations for the purpose of dispatching business for his employer are within the course of his employment, whereas, considered infra § 222, detours and deviations for the employee's individual purposes while on a trip for his employer are not, as a general rule, in the course of the employment.

"An employee making a trip necessitated by his work is in the course of his employment so as to entitle him to compensation for an injury sustained during the trip, although the employee, while so traveling, is also serving some purpose of his own. The mission for the employer must be the major factor or at least a concurrent cause of the journey; it is insufficient if the employer's business is merely incidental to what the employee was doing for his own benefit, and an injury suffered by an employee on such a trip does not arise out of, or in the course of, the employment."

See also 99 C.J.S. supra, § 222, subparagraph (b), page 747, wherein it is stated:

"*An employee is not outside the course of his employment where as a matter of judgment and not in pursuit of a personal mission, he takes a route different from that suggested by his employer.*" (Emphasis supplied.)

In my opinion, no logical or legal reason was given by the employer as to why the employee should have gone by way of Jackson instead of by Sherman.

Under the facts in this case I think that the employee was exercising his judgment or choice of two routes. He was paid by commission and therefore, naturally, concerned about the shortest and quickest way to get the livestock at Tupelo and re-

turn to Elk City. Unquestionably, he was not on a personal mission. He was traveling on his employer's business, and must be regarded as acting within the course of the employment during the entire period of his travel upon his employer's business. His acts in traveling and procuring lodging on this long trip are incidents of the employment. Injuries received under these circumstances are compensable, under our statutes 85 O.S.1951 § 1 et seq. and our liberal construction of them (Choctaw County v. Bateman, 208 Okl. 16, 252 P.2d 465). These facts justify the application of the *"emphasized rule"* in the last quotation from 99 C.J.S. supra, and the rules announced in California Casualty Indemnity Exchange v. Industrial Accident Commission of California, supra, and Dalgleish v. Holt, supra.

The argument that the deviation in violation of employee's positive orders to take a certain route is fatal to employee's right to compensation, as hereinbefore discussed, is a new question in this state, and our decision on this matter is one of first impression; however, the question has been considered in other jurisdictions. See the recent case (Dec.1956) of White v. Morris, 182 Pa.Super. 454, 127 A.2d 748, 750, wherein it was said:

" 'Defendant hired claimant and paid him on a commission basis—22% of the amount of the rental receipts plus lodging expense while on the road. Defendant deducted for claimant's social security and withholding taxes. He testified, "I told him what to do and how to do it. I was his boss. He took orders from me. He was on my payroll."

" 'On Saturday, February 21, 1953, defendant, in Philadelphia, instructed plaintiff, in Philadelphia, to take the tractor-trailer combination to Hoboken, New Jersey to pick up a load of steel and return. Claimant did so and storaged the equipment, together with the load, in defendant's garage in Philadelphia, Saturday evening. On Monday, February 23, 1953, defendant instructed claimant to proceed with the tractor-trailer to some additional places in Philadelphia to pick up additional cargo. Claimant did so. Then, in accordance with instructions, he went to the Transamerican Freight Lines office on Ridge Avenue and picked up the bill of lading and other papers relating to the trip. These matters were completed at approximately 5:30 p. m.

" '*Instead of leaving as instructed by defendant directly from the Transamerican office on Ridge Avenue to the Pennsylvania Turnpike interchange at Norristown * * * claimant returned to his home, washed, changed clothes and rested until 11:00 p. m. He then left Philadelphia over Lancaster Avenue via Route No. 30, stopping at Coatesville, Penna., for coffee and continuing to Lancaster, Penna. At Lancaster he made a wrong turn and in traveling on a township road, missed a turn, causing him to leave the road and strike a tree which resulted in the accident.*'

"*Appellants' first and principal contention is that claimant was not in the course of his employment when injured because he had deviated from the prescribed travel route.* While our ultimate determination of this issue presents a question of law, Rybitski v. Lebowitz, 175 Pa.Super. 265, 104 A.2d 161, so far as the factual situation is concerned we are bound by the findings of the Board if they are supported by the evidence. Nelson v. Borough of Greenville, 181 Pa. Super. 488, 124 A.2d 675. *We must bear in mind that a tractor-trailer is placed in the care of its operator for extended trips requiring several days at a time, and the operator ordinarily has some discretion as to route, meals, sleep, fuel, and repairs.* See Lindenmuth v. Steffy, 173 Pa.Super. 509, 98 A. 2d 242. The cases cited by appellant can be readily distinguished. Paulin v. Williams & Co., 122 Pa.Super. 462, 186

A. 415; Knowles v. Parker Wylie Carpet Co., 129 Pa.Super. 257, 195 A. 445, and Titus v. S. E. Sostmann & Co., 133 Pa.Super. 201, 2 A.2d 580, involved salesmen on personal missions. Shoffler v. Lehigh Valley Coal Co., 290 Pa. 480, 139 A. 192, involved the illegal operation of a locomotive. Kirker v. W. M. McIntosh Co., 156 Pa.Super. 199, 39 A.2d 846, involved a truck operated by an employe on a joy-ride. Ginther v. J. P. Graham Transfer Co., 149 Pa.Super. 635, 27 A.2d 712, reversed 348 Pa. 60, 33 A.2d 923, 148 A.L.R. 704, actually supports appellee's position. It was therein expressly *held that, so long as the employe was operating the truck for the purpose of delivering the cargo, he was in the course of his employment and the fact that there had been a deviation was immaterial.* * * *

"*Appellants next contend that appellee violated the positive orders of his employer because he traveled by Route 30 rather than by the Turnpike. They argue 'that the employe breaks the continuity of his employment and thus becomes a trespasser with regard to the relationship to the employer.'* The only case cited is Shoffler v. Lehigh Valley Coal Co., supra, 290 Pa. 480, 139 A. 192, which, as previously noted, presents an entirely different factual situation. The decision in the Shoffler case was limited and explained in Dickey v. Pittsburgh & Lake Erie R. Co., 297 Pa. 172, 146 A. 543, *wherein the Supreme Court pointed out that acts in disregard of the employer's positive orders do not prohibit compensation where the employe's duties included the doing of the act which caused the injury. It cannot be successfully maintained that proceeding*

*West on Route 30 instead of on the Turnpike placed appellee in the position of a stranger to his employer or a trespasser on the truck.*" (Emphasis supplied.)

From the above cited authorities which I think should be applied to the facts in this case, the following rules may be deduced:

First: As a general rule an employee hired to drive employer's truck over a long distance for a period of several days is regarded as acting within the course of the employment during the entire period of his travel upon his employer's business. His acts in traveling, procuring food and shelter are all incidents of the employment, and where injuries are sustained during the course of such activities, the Workmen's Compensation Act applies.

Second: An employee is not outside the course of his employment where as a matter of judgment and not in pursuit of a personal mission, he takes a route different from that suggested by his employer; and, where an employee, as in the instant case, was acting within the course of his employment, the fact that there had been a deviation was immaterial.

Under the facts in this case and the applicable law, I conclude that the finding and judgment of the trial judge (no appeal was taken to the Commission en Banc) is not sustained by the law or the evidence, and that for the reasons given herein the order denying an award should be reversed and remanded with directions for further proceedings consistent with the law and the evidence.

I therefore respectfully dissent.